UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
MICHAEL FRANCHINO,
                        Plaintiff,

                                        COMPLAINT

   -against-

THE ROMAN CATHOLIC ARCHDIOCESE OF
NEW YORK, d/b/a ARCHCARE,

                        Defendant.
------------------------------------------------------------------

      Plaintiff Michael Franchino, through the undersigned counsel Michael D. Diederich, Jr., complains of the defendant The Roman Catholic Archdiocese of New York, d/b/a ArchCare, as follows:

### Prefatory Statement

      This is a action for damages and injunctive relief against defendant Roman Catholic Archdiocese of New York d/b/a ArchCare ("Defendant"), for its discriminatory termination of Plaintiff's employment, in violation of, *inter alia*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e ("Title VII")(sex and national origin/ethnicity discrimination), and parallel New York state law.

### THE PARTIES

1. Plaintiff Michael Franchino is, and was at all times relevant herein, a citizen of the United States and a resident of the Town of Clarkstown, County of Rockland, State of New York.

2. Defendant Roman Catholic Archdiocese of New York d/b/a ArchCare ("Defendant") (hereinafter "Defendant" or "ArchCare"), upon information and belief, is and at all times relevant herein was a religious organization operating a legal entity organized and existing under

the laws of the State of New York, with located in 205 Lexington Avenue, 3rd Floor New York, NY 10016.

3. To the extent that Defendant ArchCare is a business entity independent of the Defendant Roman Catholic Archdiocese of New York, it is deemed a separate defendant here.

4. Defendant is an employer within the meaning of 42 U.S.C. § 2000e-(b).

5. Upon information and belief, Defendant has, at all times herein relevant, been authorized to conduct business in New York State.

6. Upon information and belief, to the extent Defendant and ArchCare are joint enterprises, joint employers and/or integrated employers, they are named as such herein

## JURISDICTION AND VENUE ALLEGATIONS

7. This court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and under 28 U.S.C. § 1331 and § 1343(4).

8. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

Overview

9. Plaintiff became an employee of the ArchCare on or about August 25, 2008.

10. Plaintiff was discriminated against by ArchCare on the basis of a) his age, b) his gender, and c) his national origin/ethnicity.

11. Plaintiff is 68 years of age, with date of birth in 1947.

12. ArchCare terminated Plaintiff's employment on or about September 3, 2014.

13. Plaintiff was terminated by ArchCare after 8 years of faithful employment by the Archdiocese (6 years with ArchCare) as a human resources professional.

14. As evidenced by his performance reviews, Plaintiff had an exemplary and

unblemished employment record during the whole period of time of his employment.

<u>Evidence of Unlawful Discrimination—Age, Gender & National Origin/Ethnicity Discrimination</u>

15. Plaintiff was terminated because of his age, which discrimination was also motivated by Plaintiff's gender and national origin/ethnicity.

*Age animus shown via "jokes"*

16. Ageist comments were frequently directed at Plaintiff in the workplace by higher management.

17. Specifically, during his employment with Defendant, Plaintiff was frequently the brunt of embarrassing and hurtful age-related jokes made by his superiors (and a peer Director of Human Resources, condoned by superiors, including but not limited to Mr. Peter Hill and Mr. Hugo Pizarro) on conference calls, company sponsored functions and at business meeting.

18. These age-related jokes included making fun of the fact that, at age 67, Plaintiff had four children who were barely teenagers.

19. Additionally, at Human Resource staff meetings, a peer Director of Human Resources likewise consistently and regularly directed age related jokes at the Plaintiff (condoned by higher management who were present in the room, including but not limited to Mr. Peter Hill and Mr. Hugo Pizarro).

20. Rather than curtail the improper behavior and comments, senior management would make subtle comments to encourage the behavior by the peer Human Resources Director.

21. There were also numerous e-mails poking fun of at Plaintiff because of his age.

22. Ms. Lydia Mercado and the other ArchCare officials involved in the termination of Mr. Franchino's employment are all substantially younger employees of ArchCare.

23. Evidence that age was the cause of Plaintiff unlawful termination, additionally motivated by gender bias, were Respondents' completely unfounded allegations—designed to embarrass and harass Plaintiff —that Plaintiff acted toward others as essentially a "dirty old man."

24. This is offensive stereotyping, and maliciously undertaken to coerce Plaintiff, on the day of his suspension, into agreeing to a manifestly unfair and inadequate severance agreement when viewed against other severance agreements offered to employees who would rather resign than be terminated "for cause"—employees with far less service than Plaintiff.

25. Upon information and belief, Plaintiff was replaced by a much younger worker.

*Gender animus shown via unfounded and scurrilous accusations*

26. Plaintiff was discriminated on account of being a male occupying a human resources/personnel position.

27. Specifically, Defendant (through its management) fabricated a bogus basis to justify the termination of Plaintiff's employment, by accusing him of sex discrimination.

28. Accordingly, upon information and belief, Defendant's management solicited false accusations of sex discrimination and worse—sex harassment—against Plaintiff by asserting completely subjective and improvable actions such as, essentially, looking at women in a sexist manner.

29. For example, he was accused of "undressing women with his eyes" (something that is a physical impossibility), and not something Plaintiff did even metaphorically.  It is a sham accusation.

30. No more than two months prior to the Plaintiff's termination, ArchCare undertook a system wide employee satisfaction survey. The survey allowed and encouraged all employees to

participate. Employees answer predetermined questions, and then were afforded the opportunity to comment on any other matter or about management personnel.

31. The survey was conducted in small groups in private room with no management personnel present. Completed surveys were then placed by employees in envelopes that they sealed, placed in a box and sent to an outside company for processing.

32. With over 600 employees responding, there was not a single complaint lodged by any employee against Plaintiff, even though any employee could have done so with complete anonymity.

33. When Peter Hill, Corporate Director Human Resources, conducted random interviews (sometimes at the desks of female employees in open work areas), there were many females who spoke very highly of the Plaintiff and his professional behavior.

34. Defendant intentionally ignored this favorable evidence regarding Plaintiff's job performance, good character and integrity.

35. Plaintiff was replaced by a female worker.

*National origin/ethnicity bias shown by preference for another*

36. Upon information and belief, the reason Plaintiff was terminated is because the person who should have been terminated—Ms. Lydia Mercado-Boswick—is a much younger Hispanic woman, and an employee whom Defendant viewed as possessing a potential case of discrimination had Defendant deservedly fired her, rather than Plaintiff.

37. Specifically, several months prior to his termination, Plaintiff was consulted by one of Defendant's managers, Mr. George Hajjar (now deceased), regarding the work performance of Ms. Mercado-Boswick.

38. Ms. Mercado was the director of the developmental disabilities clinic at the Terence Cardinal Cook Health Care Center.

39. Mr. Hajjar desired that the employment of Ms. Mercado be terminated because of her abusive treatment of subordinates, among other reasons.

40. Mr. Hajjar held a meeting on site in the DDC clinic with Ms. Mercado present, which meeting Plaintiff was directed to facilitate by Mr. Pizarro and Hill. At the meeting, Ms. Mercado was strongly criticized (indeed, vilified) by her subordinates.

41. Upon information and belief, Ms. Mercado blamed Mr. Franchino for this meeting and her receipt of criticism about her job performance.

42. As a result, Ms. Mercado then sought to exact revenge against Plaintiff by inducing false testimony from one temporary subordinate seeking a full time permanent position. Plaintiff confirmed this with another witness.

43. Upon information and belief, Defendant recognized (or should reasonably have realized) that Ms. Mercado was seeking to eliminate the people who were aware of her professional deficiencies, and the criticisms of her job performance.

44. Because Mr. Hajjar had died suddenly of a heart attack, Ms. Mercado needed only to eliminate Plaintiff as a critic.

45. Prior to her statement to Mr. Hill, Ms. Mercado made bogus allegations. These included a charge that, inter alia, Plaintiff looked down the blouse of one of her staff while she was seated at her desk. This allegation, along with all other allegations in her prior allegation was thoroughly investigated by Mr. Hill, including an interview with the named employee, and determined to be unfounded.

46. Specifically, the employee in question vehemently denied Ms. Mercado's statements and went on to file an unfair labor practice charge with the National Labor Relations Board against Ms. Mercado.

47. Plaintiff was summoned to a meeting on Tuesday, September 9, 2014, where Mr. Hill confirmed that Ms. Mercado's written statement was a repetition of unsupported allegations that were previously made and investigated.

48. Ms. Mercado is a younger, Hispanic woman who, upon information and belief, has also claimed a disability for the principal purpose of obtaining unwarranted job security.

49. Upon information and belief, from a human resources perspective, it is easier to terminate the older American man than the younger Hispanic woman claiming a disability.

50. However, this is not a legitimate ground for terminating an employee. Rather, it is a non-*bona fide* justification.  Rather, it is unlawfully discriminatory and pretextual.

51. Moreover, upon information and belief, this situation involves "reverse gender discrimination", in that a female manager has concocted a strategy for exacting revenge against her much older male colleague by improperly and maliciously playing "the age & gender card."

Non-*bona fide* basis reason for termination

52. Ms. Mercado is a younger, Hispanic woman who apparently has claimed a disability.

53. From a human resources perspective, perhaps it was easier to terminate the older man than the young Hispanic woman claiming a disability.

54. This is not, however, a legitimate or bona fide business grounds for terminating an employee.

*Mr. Hill's discrimination and pretext*

55. The Defendant's Corporate Director of Human Resources Peter F. Hill, by letter dated September 18, 2014, characterizes, and threatens to defame, Plaintiff as a human resources professional whom (Mr. Hill alleges) engaged in inappropriate or sexist conduct in the workplace.

56. First, the accusations are unfounded and baseless.

57. Second, the accusations appear designed to threaten Plaintiff, to obtain leverage at the negotiation table regarding Plaintiff's allegations of wrongdoing by Defendant.

58. Thus, the allegations are sham, pretextual and baselessly asserted in bad faith.

59. Upon information and belief, Mr. Hill is well aware of the background of this case. He knows, for instance, that:

   a. Plaintiff discussed with George Hajjar (now deceased) the work performance of Lydia Mercado-Boswick, director of the developmental disabilities clinic at the Terence Cardinal Cook Health Care Center;
   b. Mr. Hajjar desired that the employment of Ms. Mercado be terminated because of her abusive treatment of subordinates, creation of an unlawfully hostile and unlawfully discriminatory work environment, among other reasons;
   c. Mr. Hajjar held a meeting where Ms. Mercado was criticized by her subordinates; and
   d. Ms. Mercado blamed Mr. Franchino for this.

60. Mr. Hill, upon information and belief, was also aware that Ms. Mercado sought to protect her job, and to exact revenge, by soliciting false testimony from one or more of her subordinates, and essentially bribing one such subordinate employee with the promise of a job at the clinic.

*Plaintiff's excellent work relationship with Defendant's workers*

61. Upon information and belief, there are numerous women employed by Defendant who can and will attest to Plaintiff's good character and (non-sexist) professionalism in the workplace.

62. Plaintiff's performance evaluations also reveal his fine performance and personal character.

63. Upon information and belief, Mr. Hill was aware of this.

64. Under Defendant's policies and standard operating procedures, Plaintiff's last Performance Review was supposed to be prepared by Mr. Hill and given to the Plaintiff on the anniversary date of Plaintiff's employment, August 25, 2014.

65. However, upon information and belief, Mr. Hill had no intention of preparing or giving Plaintiff his performance review because it would undermine his discriminatory and retaliatory intention to fire Plaintiff.

Breach of Contract Claim for Breach of Duty of Good Faith and Fair Dealing

66. In ArchCare's rush to terminate the Plaintiff, ArchCare failed to follow its published Policies and Procedures in other ways too.

67. For example, in all matters of employee discipline, employees are called in to a meeting.  Union employees are automatically given a witness to the meetings. Non-union employees, like Plaintiff, are asked if they would like someone present.

68. Plaintiff was never asked nor offered to have another employee of his choosing present.  Defendant's agents just began asking questions.

69. Plaintiff asked if his attorney could be present, but was denied.

70. Upon information and belief, Defendant breached an implied contract with Plaintiff by denying him a fair severance package upon terminating his employment similar to both exempt, nonexempt and 1199SEIU employees with far less service.

Damages

71. Plaintiff remains unemployed as a result of his wrongful termination, and requests reinstatement and back pay, as well as compensation for the emotional damages related to Defendant's unlawful actions.

72. Under the Age Discrimination in Employment Act, Plaintiff is entitled to liquidated damages in a sum equal to damages for back pay, as well as front pay and an award of attorney's fees.

73. Title VII provides additional redress, as does the New York State Human Rights Law and New York City Human Rights code provisions.

 "Right to Sue" Letter

74. Plaintiff has filed a timely charge of race discrimination with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue, issued by the EEOC, a copy of which is attached hereto as <u>Exhibit</u> "1".

**FIRST CLAIM FOR RELIEF—
GENDER, ETHNICITY AND NATIONAL ORIGIN DISCRIMINATION
IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e**

75. Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

76. Plaintiff is an American-born male who had excellent job performance yet discriminated against on the basis of his gender and ethnicity/national origin.

77. Defendant's justification for Plaintiff's termination was, upon information and belief, pretextual and a sham.

78. As a proximate result of Defendant's actions, Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

79. As a further proximate result of Defendant's discrimination against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

80. As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

81. Plaintiff has been damaged thereby.

82. The conduct of defendants was wanton, outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

### SECOND CLAIM FOR RELIEF—
### AGE DISCRIMINATION IN VIOLATION OF THE
### AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"),
### 29 U.S.C. § 621 *et seq*.

83. Plaintiff hereby repeats and reiterates each of the allegations above as if full repeated here at length.

84. Upon information and belief, "but for" Plaintiff's age, Defendant would not have had such animus regarding Plaintiff.

85. Upon information and belief, a reasonable jury will find Plaintiff's age to be a "but for" cause of his termination.

86. Plaintiff has been damaged thereby.

**THIRD CLAIM FOR RELIEF—**
**RETALIATION IN VIOLATION OF**
**42 U.S.C. § 2000e and the ADA**

87. Plaintiff's repeats and reiterates each of the allegations above as if full repeated here at length.

88. Plaintiff's reported and objected to unlawful discrimination in favor of Ms. Mercado, and prejudicing Plaintiff, which contact amounts to unlawful reprisal.

89. Particularly in Plaintiff's position as a HR Director, Defendant retaliated against Plaintiff because it knew Plaintiff would support Defendant's workers and not the abusive young Hispanic manager, Ms. Mercado.

90. Firing Plaintiff on this basis amounts to unlawful retaliation.

91. Plaintiff was damaged thereby.

**FOURTH CLAIM FOR RELIEF—**
**SUPPLEMENTAL NEW YORK CLAIMS**

92. Plaintiff's repeats and realleges each of the allegations above as if full repeated here at length.

93. Defendant's disparate treatment of plaintiff on the basis of his age, gender, national origin and ethnicity was in violation of the New York State Human Rights Law.  *See*, N.Y.S. Exec. Law s. 296 *et seq*.

94. Plaintiff was damaged thereby.

**FIFTH CLAIM FOR RELIEF—**
**SUPPLEMENTAL NEW YORK CITY LAW**

95. Plaintiff's repeats and realleges each of the allegations above as if full repeated here at length.

96. Defendant has committed unlawful discriminatory acts as defined in Chapter 1 of the

New York City Human Rights Law. *See*, Administrative Code of the City of New York, § § 8-107.

97. Plaintiff has a right of action for damages and other appropriate relief under Chapter 5 of the New York City Human Rights Law. *See*, Administrative Code of the City of New York, § 8-502.

98. Plaintiff's counsel will serve a copy of this complaint upon the designated representative of the City Commission on Human Rights and the Corporation Counsel within 10 days of the filing of this complaint.

99. Plaintiff seeks damages, punitive damages and injunctive relief thereunder.

### SIXTH CLAIM FOR RELIEF—
### BREACH OF CONTRACT

100. There exists an obligation of good faith and fair dealing in all contracts, including Plaintiff's "at will" contract of employment.

101. Upon information and belief, there existed an implied contract between Plaintiff and Defendant that Plaintiff would receive a fair severance if his employment were terminated without just cause.

102. Plaintiff's employment was terminated without just cause.

103. Plaintiff is entitled to a reasonable and fair severance.

### DEMAND FOR JURY
*Plaintiff hereby demands trial by jury in this action.*

WHEREFORE, Plaintiff prays that this Court grant judgment containing the following relief:

A. An award of Plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay compensating plaintiff for loss of past and future salary and benefits;

B.  An award of damages to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

C.  An award of punitive damages;

D.  An order enjoining defendants from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's employment with Defendant;

E.  An award of reasonable attorneys' fees and the costs of this action; and

F.  Such other and further relief as this Court may deem just and proper.

Dated:  Stony Point, New York
        August 11, 2015

                                                       /S/
                                MICHAEL D. DIEDERICH, JR.
                                *Attorney for Plaintiff   MD 2097*
                                361 Route 210
                                Stony Point, NY 10980
                                (845) 942-0795
                                Mike@DiederichLaw.com

Attachments
  Exhibit "1" – Right to Sue Letter

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| | |
|---|---|
| **To:** Michael Franchino<br>20 Hovenkamp Avenue<br>Nanuet, NY 10954 | **From:** New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-01406 | Charles K. Diamond, Investigator | (212) 336-3771 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Kevin J. Berry_     7/2/2015
Kevin J. Berry, District Director     (Date Mailed)

Enclosures(s)

cc:
Director of Human Resources
ARCHCARE
205 Lexington Avenue
3rd Floor

N Jessica Moller
BOND, SCHOENECK & KING, PLLC
1010 Franklin Avenue, Suite 200
Garden City, NY 11530
New York, NY 10016

Michael D. Diederich, Jr.
MICHAEL D. DIEDERICH, JR. ATTORNEY AT LAW
361 Route 210
Stony Point, NY 10980

Complaint Exhibit "1"