UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL FRANCHINO,                                :
                          Plaintiff,              :
                                                  :        **OPINION AND ORDER**
v.                                                :
                                                  :        15 CV 6299 (VB)
THE ROMAN CATHOLIC ARCHDIOCESE                    :
OF NEW YORK, d/b/a ARCHCARE, and                  :
TERENCE CARDINAL COOK HEALTH                      :
CARE CENTER, INC.,                                :
                          Defendants.             :
--------------------------------------------------------------x
Briccetti, J.:

Plaintiff Michael Franchino brings this civil rights action against The Roman Catholic Archdiocese of New York, doing business as ArchCare, and Terence Cardinal Cook Health Care Center, Inc., claiming gender, ethnicity, and national origin discrimination under Title VII of the Civil Rights Act of 1964, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and related claims under the human rights laws of New York State and New York City.[1]

Defendants have moved to dismiss the amended complaint for failure to state a claim. (Doc. #20).

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For purposes of deciding the pending motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

Plaintiff is an American non-Hispanic Caucasian male born in 1947.  He began working

---

[1]     Plaintiff initially brought claims based on retaliation but withdrew those claims in his

at one of defendant ArchCare's facilities in 2008 as a human resources staff member.  In 2010, plaintiff transferred to another ArchCare-run facility, defendant Terence Cardinal Cook Health Care Center, Inc., where the relevant events occurred.

I.      Allegations of Age Discrimination

Plaintiff alleges he was "frequently the brunt of embarrassing and hurtful age-related jokes."  (Am. Compl. ¶ 21).  Plaintiff alleges the following three facts: (i) one of the jokes was "at age 67, [p]laintiff had four children who were barely teenagers"; (ii) "[p]laintiff's superiors allowed him to be depicted as old and decrepit in unflattering cartoons"; and (iii) one of the jokes plaintiff's superiors condoned was "referring to [plaintiff] as a 'carry out', i.e. someone who would pass away on the job."  (Id. at ¶¶ 24-27).  Plaintiff alleges these jokes were made or condoned by "peers," "higher management," or his "superiors," including a Vice President of Human Resources.  (Id. at ¶¶ 20-21, 26).  Plaintiff does not allege who said which comments, who created the cartoons, how his superiors "condoned" the comments and cartoons, or when these events occurred.

Plaintiff also alleges "[u]pon information and belief," he was replaced by a "much younger female worker."  (Am. Compl. ¶ 49).

II.     Allegations of Sex, Ethnicity, and National Origin Discrimination

Lydia Mercado-Boswick[2] was the director of the developmental disabilities clinic at the center where plaintiff worked.  Plaintiff alleges she is substantially younger than him and is Hispanic.

At some unspecified point in time, plaintiff alleges his supervisors tasked him with

opposition to defendants' motion to dismiss.  (Pl.'s Opp. at 25).

[2]     Although plaintiff often refers to Ms. Mercado-Boswick as "Ms. Mercado," the Court refers to her by what appears to be her full name.

monitoring Ms. Mercado-Boswick's department and her interactions with her staff due to

"accusations that Ms. Mercado[-Boswick] was creating an unlawfully hostile work environment"

due to "her abusive treatment of subordinates." (Am. Compl. ¶¶ 32, 76). Plaintiff alleges Ms.

Mercado-Boswick's supervisor wanted her disciplined and fired, but plaintiff's own bosses in the

Human Resources department "were biased in favor of Ms. Mercado[-Boswick], because she

was a much younger Hispanic woman." (Id. at ¶ 34).[3]

Plaintiff's supervisors directed him to facilitate a meeting with Ms. Mercado-Boswick,

her supervisor, and her subordinates regarding the allegations she was abusive towards

subordinates. Plaintiff alleges Ms. Mercado-Boswick received criticism for her job performance

and blamed him for the criticism.

After plaintiff "attempted to lend [human resources] support" for Ms. Mercado-

Boswick's termination, he alleges she "sought to exact revenge" because she perceived plaintiff

to be "tasked with disciplining her and potentially terminating her employment." (Am. Compl.

¶¶ 38, 80). Plaintiff alleges Ms. Mercado-Boswick "sent a letter to [the Corporate Director of

Human Resources] baselessly alleging impropriety by [plaintiff] toward a female member of her

staff." (Id. at ¶ 37). Specifically, Ms. Mercado-Boswick accused plaintiff of standing over a

seated employee and staring down her blouse. (Id. at ¶ 45). Plaintiff contends Ms. Mercado-

Boswick induced false testimony from a subordinate who was a temporary employee seeking a

full-time position. Plaintiff also alleges the woman whose blouse he was accused of staring

down denied the accusation.

---

[3]   Plaintiff alleges his boss was biased in favor of Ms. Mercado-Boswick because the boss
and Ms. Mercado-Boswick were about the same age and both were Hispanic. (Am. Compl. ¶
82). In addition, plaintiff speculates that his boss "believed that the Church would instinctively
favor siding with an Hispanic woman, as the Pontiff, Pope Francis, is a Hispanic opposed to
sexual abuse by men abusing Church authority." (Id. at ¶ 83).

According to the amended complaint, the allegations against plaintiff were "fully investigated" by the Corporate Director of Human Resources.  (Am. Compl. ¶ 39).  Plaintiff alleges the allegations were found to be "meritless," but that defendant ArchCare "(ostensibly) believed" Ms. Mercado-Boswick.  (Id. at ¶¶ 40, 100).  On or about September 3, 2014, plaintiff was terminated.  (Id. at ¶ 16).  Thereafter, the Corporate Director of Human Resources sent plaintiff a letter stating plaintiff had "engaged in inappropriate or sexist conduct in the workplace," including "undressing women with his eyes."  (Id. at ¶¶ 53, 90).[4]

Around this time, plaintiff alleges Ms. Mercado-Boswick claimed a disability to obtain "unwarranted job security."  (Am. Compl. ¶ 86).  Plaintiff alleges Ms. Mercado-Boswick should have been terminated, but defendants terminated plaintiff instead because, from a "legal exposure" standpoint, it would be "easier [for defendant] to terminate the older American/Caucasian man than the younger Hispanic woman claiming a disability."  (Id. at ¶ 88).

During his employment at ArchCare, plaintiff alleges his annual performance record was "exemplary and unblemished."  (Am. Compl. ¶ 18).  In an employee satisfaction survey conducted two months prior to his termination, he contends no complaints were lodged against him.  Plaintiff further alleges Human Resources interviews with employees revealed "many females who spoke very highly" of him.  (Id. at ¶ 59).

## DISCUSSION

I.   Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft

---

[4]     Plaintiff also alleges that ArchCare failed to follow its own human resources policy because he was denied (i) specific details about the allegations, (ii) representation, and (iii) an opportunity to respond to the allegations.  (Am. Compl. ¶ 70).

v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.    Title VII Discrimination Claim

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Therefore, a plaintiff asserting a discrimination claim under Title VII must allege (i) the employer discriminated against him (ii) because of his race, color, religion, sex, or national origin.

With respect to the first element, an employer discriminates against a plaintiff "by taking an adverse employment action against him."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015).  Examples of adverse employment actions include termination, demotion, or a material loss of benefits.  See Feingold v. New York, 366 F.3d 138, 152 (2d Cir.

2004).

With respect to the second element, "an action is because of a plaintiff's race, color, religion, sex, or national origin where it was a substantial or motivating factor contributing to the employer's decision to take the action." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85 (quotation marks omitted).

In making a plausibility determination at the motion to dismiss stage, plaintiff's burden is "minimal." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). The question is "whether the well-pleaded allegations plausibly give rise to an inference of unlawful discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 87. "[T]he court must be mindful of the elusive nature of intentional discrimination." Id. at 86 (quotation marks omitted). "Rarely is there 'a direct, smoking gun, evidence of discrimination.'" Id. (quoting Richards v. N.Y.C. Bd. of Educ., 668 F. Supp. 259, 265 (S.D.N.Y. 1987), aff'd, 842 F.2d 1288 (2d Cir. 1988). Thus, to defeat a motion to dismiss, plaintiff must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 87.

Plaintiff satisfies the first element of a Title VII discrimination claim because he alleges defendants took an adverse employment action against him by terminating his employment.

As to the second element, plaintiff alleges his termination was motivated by discrimination because he is an American non-Hispanic Caucasian male, while a female Hispanic co-worker was not fired. Plaintiff's theory of discrimination is one of "disparate treatment" – i.e., defendants terminated him while a similarly situated employee, who did not have his same protected characteristics, was not terminated. See Johnson v. Andy Frain Servs., Inc., 2016 WL 210098, at *2 (2d Cir. Jan. 19, 2016) (summary order) (citing Mandell v. Cnty. of

Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)) ("[A] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.").

The Court finds plaintiff failed plausibly to allege his termination was motivated in part by discrimination.

The amended complaint does not contain any facts to support an inference that plaintiff and Ms. Mercado-Boswick engaged in conduct of comparable seriousness, and that defendants chose to terminate plaintiff in part because of his gender, ethnicity, or national origin. "In the context of employee discipline, the plaintiff and the similarly situated employee must have engaged in comparable conduct, that is, conduct of comparable seriousness." Dooley v. JetBlue Airways Corp., 2015 WL 9261293, at *4 (2d Cir. Dec. 18, 2015) (quoting Raspardo v. Carlone, 770 F.3d 97, 126 (2d Cir. 2014)) (alteration omitted). Plaintiff alleges he was accused of inappropriate or sexist conduct in the workplace, the accusation was investigated by his boss, and the boss terminated him. Plaintiff makes no comparable allegations as to Ms. Mercado-Boswick. Instead, he simply asserts Ms. Mercado-Boswick created "a hostile work environment" and was "abusive" towards her subordinates. (Am. Compl. ¶¶ 32, 76).[5] These conclusory allegations, without more, cannot support an inference that he and Ms. Mercado-Boswick engaged in comparable conduct and defendants chose to terminate plaintiff due to his gender, ethnicity, or national origin.

---

[5] "Whether two employees are similarly situated ordinarily presents a question of fact" rather than a legal question to be resolved on a motion to dismiss. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). Here, however, plaintiff's amended complaint lacks even a single non-conclusory allegation of Ms. Mercado-Boswick's conduct that might warrant her termination. Thus, as a matter of law, plaintiff has not "nudged his claims of invidious discrimination across the line from conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. at 680 (2009) (alterations and quotation marks omitted).

Plaintiff also argues the accusation of inappropriate or sexist conduct leveled against him was a "pretext" for his termination, while the true reason he was terminated was his gender, ethnicity, or national origin.  (Am. Compl. ¶ 99).[6]  The problem with plaintiff's theory of pretext is that none of his allegations supports the plausible inference that he was investigated for inappropriate or sexist conduct because of his gender, ethnicity, or national origin.

First, plaintiff alleges the investigation into the accusation of inappropriate or sexist conduct was a pretext for his termination based on his belief he was falsely accused because he is male.  But without factual allegations to support this belief, such as discriminatory comments about plaintiff's gender, the mere fact plaintiff felt he was accused of sexist conduct because he is male is insufficient to indicate gender bias.  See Doe v. Columbia Univ., 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015) ("Plaintiff's subjective belief that he was the victim of discrimination – however strongly felt – is insufficient to satisfy his burden at the pleading stage.").

Second, plaintiff alleges the sexist conduct investigation was a pretext for his termination, and the true reason was ethnicity- or national origin-based discrimination because plaintiff is Caucasian American, while both Ms. Mercado-Boswick and the "ultimate decision-maker" are Hispanic.  (Am. Compl. ¶ 82).  That allegation, without more, is insufficient to support a plausible inference of discrimination based on ethnicity.  See Ochei v. The Mary Manning Walsh Nursing Home Co., 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ("Where there is no reason to suspect that an employer's actions had anything to do with membership in a protected class, other than plaintiff's bald assertion that she was a member of such a class, and the people who

---

[6]     Although plaintiff is not required to rely on the McDonnell Douglas formulation in pleading a claim of discrimination, see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 84 n.7, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim."  Littlejohn v. City of New York, 795 F.3d at 311 n.9 (internal quotation marks omitted).

made decisions about her employment were not, no claim is stated.").

Third, plaintiff alleges the sexist conduct investigation was a pretext for terminating him because his performance reviews were excellent and there were "many females who spoke very highly" of him.  (Am. Compl. ¶ 59).  But plaintiff's positive reviews do not undermine his own allegation that defendants based the decision to terminate him on the finding that he engaged in inappropriate or sexist conduct in the workplace.  See, e.g., Gutierrez v. City of New York, 756 F. Supp. 2d 491, 505 (S.D.N.Y. 2010) (in summary judgment context, "[e]vidence that [plaintiff] received some positive reviews does not demonstrate Defendants did not base their decision on negative reports they received.").

In short, the facts alleged support the conclusion that plaintiff was terminated because a co-worker accused him of inappropriate or sexist conduct in the workplace, and that the accusation was investigated and believed by his superior – irrespective of plaintiff's gender, ethnicity, or national origin.  Thus, plaintiff has plainly failed to meet the "minimal" burden plausibly to allege his gender, ethnicity, or national origin were "substantial or motivating" factors in his termination.  Littlejohn v. City of New York, 795 F.3d at 311; Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85.[7]

Accordingly, the Title VII claim is dismissed.

III.   Age Discrimination Claim

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise

---

[7]   In addition to disparate treatment discrimination, the Court has considered whether plaintiff's other allegations give rise to a plausible inference that he was terminated because of his gender, ethnicity, or national origin; specifically, the allegation that ArchCare failed to follow its own disciplinary procedures.  See Johnson v. Andy Frain Servs., Inc., 2016 WL 210098, at *2.  But plaintiff has alleged "no facts that directly evidenced animus" against individuals who are male, individuals who are non-Hispanic, or individuals who are American.  See, e.g., Baez v. New York, 629 F. App'x 116, 118 (2d Cir. 2015) (summary order).

discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  The statute's protections are "limited to individuals who are at least 40 years of age." Id. § 631.

Similar to Title VII claims, a plaintiff need only meet a "minimal" pleading standard for an age discrimination claim brought under the ADEA.  Johnson v. Andy Frain Servs., Inc., 2016 WL 210098, at *2 (summary order) (citing Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)).

Importantly, however, unlike Title VII claims, a plaintiff claiming age discrimination under the ADEA must allege "that age was the 'but-for' cause of the employer's adverse action." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 86 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)).  Thus, to survive a motion to dismiss, a plaintiff must allege his age was "not merely a motivating factor" of the adverse employment action, but that "he was terminated because of his age." Barone v. S&N Auerbach Mgmt., Inc., 2016 WL 1237871, at *1 (2d Cir. Mar. 30, 2016) (summary order).

By alleging he was 67 years old when he was terminated,[8] plaintiff has pleaded he was within the protected age group when defendants took an adverse employment action.

Plaintiff's only factual allegations with respect to age discrimination are (i) unidentified co-workers made two comments and cartoons pertaining to plaintiff's age, and (ii) plaintiff was replaced by a "much younger" worker.  (Am. Compl. ¶ 49).  The Court finds these allegations insufficient to create a plausible inference that plaintiff was terminated because of his age.

First, plaintiff's allegations that ageist comments and cartoons were made about him are too conclusory and lacking in sufficient detail to create a plausible inference he was terminated

---

[8]        Plaintiff alleges he was born in 1947 and terminated on September 3, 2014, making him

because of his age.

Plaintiff claims his co-workers made hurtful comments about his age, and certain comments were "made by his superiors or condoned by his superiors." (Am. Compl. ¶ 21). Plaintiff specifically alleges the following three facts: (i) someone made reference to the fact that, "at age 67, [p]laintiff had four children who were barely teenagers," (ii) plaintiff's superiors "allowed [plaintiff] to be depicted as old and decrepit in unflattering cartoons," and (iii) someone referred to plaintiff "as a 'carry out', i.e. someone who would pass away on the job." (Am. Compl. ¶¶ 24, 26-27). Of course, "verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." Pronin v. Raffi Custom Photo Lab., Inc., 383 F. Supp.2d 628, 636 (S.D.N.Y. 2005) (citations omitted).

However, plaintiff failed to allege when these acts occurred or who made the comments or cartoons that could support an inference of a "nexus" between the comments or cartoons and his termination. See Moore v. Verizon, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) ("Plaintiff does not allege . . . [his supervisor's] statements played any part in Plaintiff's alleged adverse employment actions.").[9] For instance, if Ms. Mercado-Boswick or plaintiff's superiors made those age-related comments and cartoons, or if the age-related comments and cartoons had been made with some temporal proximity to the accusation or investigation of plaintiff's alleged

_____

either 66 or 67 years old when he was terminated.

[9]     Even assuming these acts were linked in some way to plaintiff's termination, which plaintiff has not alleged, the two specific comments alleged by plaintiff – a comment about having teenaged children and a comment about plaintiff being a "carry-out" – do not seem to reflect a belief that he was less competent or less desirable than younger colleagues. Criley v. Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir. 1997) (affirming summary judgment in part because "[n]one of the statements cited by plaintiffs reflect[s] any age-based stereotype or belief that older pilots are less competent than younger ones").

inappropriate or sexist conduct in the workplace, then those allegations might support a plausible

inference that age played a role in his termination.  Instead, plaintiff asserted only vague

allegations devoid of a plausible nexus to his termination.  Cf. Swierkiewicz v. Sorema N. A.,

534 U.S. 506, 514 (2002) (holding complaint was sufficient when it alleged plaintiff was

terminated on account of age and it detailed the events leading up to his termination, including

relevant dates and ages of the relevant persons).  Accordingly, plaintiff's allegations as to the

comments and cartoons do not support a plausible inference that defendants considered his age in

any way when they terminated him.[10]

Second, plaintiff's allegation that "[u]pon information and belief," he was replaced by a

"much younger" worker (Am. Compl. ¶ 49), without more, does not plausibly support an

inference age was a motivating factor in his termination.  See Liburd v. Bronx Lebanon Hosp.

Center, 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) ("Although [plaintiff] alleges that

she was replaced by a younger employee, this, without more, is not enough to survive a motion

to dismiss.").

Additionally, the fact that plaintiff alleges he was hired when he was 61 years old tends

to undercut his claim of age discrimination.  See Maysonet v. Citi Grp., Inc., 2011 WL 476610,

at *5 (S.D.N.Y. Feb. 9, 2011) ("[T]he fact that [defendant] hired [plaintiff] at the age of forty-

two makes any inference of age discrimination doubtful."); Liburd v. Bronx Lebanon Hosp. Ctr.,

2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) (age discrimination claim "belied by her

having been hired when she was forty-seven years old, and thus already a member of the

---

[10]     The Court notes the amended complaint does not assert a hostile work environment claim
under the ADEA based on the alleged age-related comments or cartoons.  See Kassner v. 2nd
Ave. Delicatessen Inc., 496 F.3d 229, 240 (2d Cir. 2007) ("An actionable discrimination claim
based on hostile work environment under the ADEA is one for which the workplace is

protected class"); Whyte v. Contemporary Guidance Servs., Inc., 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004) (allegation defendant discriminates against older employees "belied" by plaintiff's allegation he was hired when he was over forty, and "thus already a member of protected class"). Defendants hired plaintiff when he was more than twenty years into the protected age class. To create an inference of age discrimination based on his termination at age 67, plaintiff could have alleged facts explaining why defendants had an ageist animus in terminating plaintiff but not in hiring him. Plaintiff has made no such allegation.[11] Thus, the plausibility of plaintiff's having been terminated because of his age is belied by the allegation that ArchCare hired him at age 61.

In sum, plaintiff has failed to meet the "minimal" pleading standard for age discrimination claims brought under the ADEA. Johnson v. Andy Frain Servs., Inc., 2016 WL 210098, at *2 (summary order). Accordingly, plaintiff's age discrimination claim is dismissed.

IV.    Human Rights Law Claims

Having dismissed the plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c).

V.    Leave to Amend

Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). It is within the Court's discretion to grant or deny leave to amend. See McCarthy v.

---

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.") (internal quotation marks omitted).

[11]    In opposing defendants' motion to dismiss, plaintiff argues he "was transferred to a location with biased personnel." (Pl.'s Opp. at 3). The Court need not consider this theory raised for the first time in plaintiff's opposition. See K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n. 8 (S.D.N.Y. 2013) (citing cases) (plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss"). Even if the Court were to consider plaintiff's theory, plaintiff began working at the facility where all

Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  A district court has no obligation to grant leave to amend sua sponte.  See Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made.").  Plaintiff has made no such request.

Here, after defendants moved to dismiss plaintiff's original complaint (Doc. #9), the Court sua sponte granted plaintiff leave to file an amended complaint to cure the deficiencies relating to his discrimination claims.  (Doc. #12).  Plaintiff filed an amended complaint.  (Doc. #16).  Because plaintiff has already had the opportunity to cure the deficiencies in his complaint, the Court declines to grant leave to amend yet again.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

The Clerk is instructed to terminate the pending motions (Docs. ##9, 20) and close this case.

Dated: June 15, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

the relevant events occurred in 2010, at the age of 63.  He was not terminated until four years later, tending to undermine the plausibility that defendants terminated him due to his age.